

Date Signed:
October 1, 2019

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>CLIFFORD ANDREW PATTON,<br><br>Debtor. | Case No. 17-00584<br>Chapter 13<br><br>Re: Docket No. 89, 99 |

## ORDER REGARDING CONDOMINIUM FEES AND RULE 3002.1

The question presented is what consequences should flow from the failure of Association of Apartment Owners of Palm Court (the "AOAO") to file timely notices of payment changes and of fees, expenses, and charges.[1]

Fed. R. Bankr. P. 3002.1 "applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment

---

[1] This order decides (1) the debtor's countermotion against the AOAO, dkt. 89, and (2) the AOAO's motion for a determination of its right to collect fees under Fed R. Bankr. P. 3002.1(e), dkt. 99.

payments."[2] The rule applies to this case because (1) it is a chapter 13 case, (2) the AOAO charges monthly payments and other fees and charges to owners in the Palm Court project, which claims are secured by liens on the owners' respective units, (3) Mr. Patton's principal residence is a condominium in the Palm Court project, and (4) Mr. Patton's plan provides for him to make all payments of postpetition monthly fees and other postpetition costs and charges to the AOAO.[3] The rule applies, not only to mortgage lenders, but also to condominium owners' associations such as the AOAO.[4]

Rule 3002.1(b) provides that the creditor "shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount . . . no later than 21 days before a payment in the new amount is due."

When Mr. Patton filed his bankruptcy petition, the monthly fee owed to the AOAO was $449.73. At this rate, the total monthly fees from July 2017 through July

---

[2] Fed. R. Bankr. P. 3002.1(a).

[3] The plan does not explicitly require Mr. Patton to make these payments, but his payment of those amounts is implicitly required. The court cannot confirm a chapter 13 plan over the objection of the trustee or an unsecured creditor unless the plan devotes to unsecured creditors all of the debtor's "projected disposable income" during the plan term. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" generally means the debtor's income "less amounts reasonably necessary to be expended for the maintenance and support of the debtor . . . ." 11 U.S.C. § 1325(b)(2). These expenses include reasonably necessary housing expenses, which includes condominium fees for a debtor like Mr. Patton, who lives in a condominium. Mr. Patton's budget includes the monthly payments to the AOAO. Dkt. 1 at 27. Thus, Mr. Patton's payment of the postpetition condominium fees is a premise on which the plan was confirmed.

[4] *In re Felipe*, 549 B.R. 252, 255-56 (Bankr. D. Haw. 2016).

2019 were $11,243.25. During this period, Mr. Patton paid a total of $12,172.60, although he paid round amounts rather than the actual amount due and some of his payments were late.[5]

While the case was pending, in or around January 2018, the AOAO increased the monthly fees to $494.70. The AOAO did not, however, provide the advance notice to Mr. Patton, his attorney, and the trustee that rule 3002.1(b) requires.

The AOAO also charged substantial attorneys' fees and costs to Mr. Patton. Rule 3002.1(c) provides that creditors such as the AOAO

> shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

Although the AOAO gave Mr. Patton and his attorney some information about these additional fees and charges, it did not file and serve a notice of the postpetition charges pursuant to Fed. R. Bankr. P. 3002.1 until July 30, 2019.

The AOAO asks the court for leave to file an amended notice that would include all post-petition attorneys' fees and costs, not just those incurred within 180 days of its notice. The rule does not permit the court to waive or modify the time requirements, but Fed. R. Bankr. P. 3002.1(i) gives the court discretion to determine

---

[5] Dkt. 89 at 13-71. Mr. Patton's record of payments is largely consistent with the AOAO's. Dkt. 70-9 at 2, 79-1 at 9-11.

the consequences of noncompliance with the remainder of the rule:

> If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
>
>> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>>
>> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

I will not exercise my discretion to relieve the AOAO of the consequences of its noncompliance. The AOAO says that it was late in filing the required notices because it hired new counsel on July 9, 2018, and a new management company in September 2018. This explanation is insufficient. Why didn't the AOAO's former counsel and management company file timely notices? Why did it take many months for its successor counsel and management company to comply?

Therefore, I will preclude the AOAO from presenting, as evidence in any contested matter or adversary proceeding in this case, any information in any form about any post-petition increase in the monthly fees, except that the AOAO may begin to charge higher monthly fees to Mr. Patton if the AOAO files and serves the required notice at least 21 days before the first higher payment is due. I will also preclude the AOAO from presenting, as evidence in any contested matter or adversary proceeding in this case, any information in any form about any fees, charges, or

4

expenses related to the AOAO's claim against Mr. Patton that were incurred on or before January 31, 2019 (180 days before the AOAO filed its rule 3002.1(c) notice).

There remain two related questions: (1) the amount that the AOAO may charge for fees, charges, and expenses incurred after January 31, 2019, and (2) whether Mr. Patton should recover attorneys' fees and, if so, in what amount.

Hawaii law creates a reciprocal right to attorneys' fees in certain disputes between condominium associations and condominium owners:

> All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
> > (1) Collecting any delinquent assessments against any owner's unit;
> >
> > (2) Foreclosing any lien thereon; or
> >
> > (3) Enforcing any provision of the declaration, bylaws, house rules, and this chapter, or the rules of the real estate commission;
>
> against an owner, occupant, tenant, employee of an owner, or any other person who may in any manner use the property, shall be promptly paid on demand to the association by such person or persons; provided that if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association.[6]

This dispute is within the scope of this statute. The question about the AOAO's compliance with rule 3002.1 came to the fore when the AOAO filed a motion for

---

[6] Haw. Rev. Stat. § 514B-157(a).

5

relief from the automatic stay. This motion sought permission to collect Mr. Patton's delinquent postpetition obligations from his unit and to foreclose the AOAO's lien on that unit. This prompted Mr. Patton to file his countermotion based on rule 3002.1, in which he sought to prevent the AOAO from collecting its claim and enforcing its lien. Mr. Patton's motion in turn prompted the AOAO to withdraw its motion for relief from the automatic stay and to file a new motion seeking to protect its claims and lien from the effects of rule 3002.1. In short, this dispute was initiated by, and related entirely to, the AOAO's efforts to collect its claims and foreclose its liens against Mr. Patton's property. Therefore, the statute applies.[7]

But the AOAO's claims were "not substantiated": the AOAO withdrew its motion for relief from the automatic stay; and I am limiting the AOAO's ability to collect its claims and foreclose its liens in proceedings before this court. Therefore, because all of the fees which the AOAO seeks during the 180-day period relate to proceedings in which its position was not substantiated, the AOAO is not entitled to recover any attorneys' fees or costs.

---

[7] This result is consistent with *Faitalia v. Village Park Community Assoc. (In re Faitalia)*, 736 Fed. Appx. 693 (2018). In that case, the debtor successfully "stripped off" an association's lien by proving that the amount of the senior liens exceeded the value of the unit. (The association in *Faitalia* was a homeowner's association governed by Haw. Rev. Stat. ch. 421J rather than a condominium association, but the attorneys' fee statute for homeowners' associations, Haw. Rev. Stat. § 421J-10(a), is not materially different from the statute applicable to condominiums, Haw. Rev. Stat. § 514B-157(a).) The Ninth Circuit held that, by filing a proof of claim and resisting the debtor's efforts to treat the claim as unsecured, the association "did not engage in any action covered by § 421J-10(a)." In this case, however, the AOAO filed a motion for relief from the automatic stay, precisely because it wished to collect its claims and foreclose its liens.

It does not follow, however, that Mr. Patton is entitled to recover fees under the statute. It would be more accurate to say that the AOAO's claims have not *yet* been substantiated. The AOAO withdrew its motion without prejudice, so it could be renewed. And rule 3002.1 empowers the bankruptcy court to bar a creditor from introducing evidence in the bankruptcy court, not in other courts.[8] It is not clear that statutory fees should be allowed to a condominium owner who has won a victory that might be only temporary.

But rule 3002.1(i) is an independent basis for an award of attorneys' fees to a debtor in Mr. Patton's situation. I conclude that Mr. Patton should be awarded reasonable attorneys' fees caused by the AOAO's failure to notify. But for his attorney's efforts, the AOAO would have collected payments to which it is not legally entitled. Requiring Mr. Patton to pay his own attorneys' fees would dilute the remedy to which the rule entitles him.

Mr. Patton may file a request for attorneys' fees, supported by one or more declarations and billing statements, not later than October 15, 2019. The AOAO may respond not later than October 22, 2019, and Mr. Patton may reply to any response

---

[8] Eventually, this court's orders could bar the AOAO from proceeding on its postpetition claims in other fora. If Mr. Patton completes his plan payments, rule 3002.1(f)-(h) establish a procedure under which this court will determine whether Mr. Patton's payments to the AOAO are current. The court's order at the conclusion of that process will take this decision as a given and will have preclusive effect in other courts. In other words, the court's decision that Mr. Patton is current at the conclusion of this case will bar the AOAO from collecting any other claims against Mr. Patton that arose during this case.

7

by October 29, 2019. The court will then determine the reasonable amount of attorneys' fees and costs without further hearing.

END OF ORDER